PENLEY V. WESTBROOK

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-260-CV

PEGGY LEE PENLEY APPELLANT

V.

C.L. WESTBROOK, JR. APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Peggy Lee Penley, a former member of CrossLand Community Bible Church (“CCBC”), brought suit against CCBC, its pastor C.L. “Buddy” Westbrook, Jr., and three church elders after Westbrook published a letter to CCBC‘s congregation urging the church members to “break fellowship” with Penley because she was seeking a divorce without a “biblical basis” and had “engage[d] in a biblically inappropriate relationship with another man.” 

In her pleadings, Penley alleged five causes of action:  defamation, breach of fiduciary duty, intentional infliction of emotional distress, invasion of privacy, and negligence.  On CCBC’s and the four individual Defendants’ pleas to the jurisdiction and motions to dismiss, the trial court dismissed all of Penley’s claims for lack of subject matter jurisdiction on the basis that the First and Fourteenth Amendments to the United States Constitution shielded them from Penley’s suit.  In three issues, Penley complains that (1) the trial court erred in dismissing her professional negligence claim against Westbrook because her pleadings showed that the trial court had subject matter jurisdiction over that claim; (2) if her pleadings did not set forth sufficient jurisdictional allegations, the trial court erred in dismissing her claim without allowing her an opportunity to amend her pleadings; and (3) the trial court abused its discretion by excluding Westbrook’s and Penley’s testimony at the hearing on the Defendants’ plea to the jurisdiction.  We will affirm in part and reverse and remand in part.

I.  Factual Background

A.  Formation of CCBC & Penley’s Membership

CCBC is an unincorporated nonprofit association founded and organized in October 1999 to exist and function as a “Christ-centered church” according to biblical principles and practices as described in CCBC’s statement of faith and constitution.  CCBC’s leadership is comprised of “elders, deacons, pastors, ministers, and a treasurer.”  When CCBC was formed in October 1999, Westbrook was selected to serve as the pastor of CCBC.  Westbrook, Dr. John Young, Mike Thatcher, and Aaron Johnson serve as elders at CCBC.  In addition to being CCBC’s pastor, Westbrook also holds himself out and works as a licensed professional counselor.  Thus, over the same period Westbrook served as the pastor of CCBC, he also engaged in the practice of providing secular professional marriage and family counseling services to individuals facing marital difficulties. 

CCBC’s constitution, among other things, sets forth the church’s membership and disciplinary policies.  According to CCBC’s constitution, an applicant for church membership must share his or her “willingness to abide by the constitution of the church” with the pastor, minister, or elder who interviews the applicant.  Thus, CCBC’s constitution required applicants to abide by the following disciplinary policy:

We believe that one of the primary responsibilities of the church is to maintain the purity of the Body.  We are directed by God to be holy.  In recognition of this obligation, the elders will biblically and lovingly utilize every appropriate means to restore members who find themselves in patterns of serious misconduct.  When efforts at restoration fail, the elders will apply the Biblical teaching on church discipline, which could include revocation of membership, along with an appropriate announcement made to the membership  (Matt 18:15-17; I Cor 5:1-5; Gal 6:1, 2; 2 Thes 3:6).

No accusation shall be brought against any member except upon the testimony of two or three witnesses. 

The constitution also provided that 

[m]embership in this church will be terminated:

Upon the request of a member who wishes to terminate his or her membership.

. . . .

Upon the unanimous vote of the elders, relating to issues of a disciplinary procedure.  When a member engages in a pattern of conduct which visibly violates Biblical standards, or which is detrimental to the ministry, unity, peace, or purity of the church, and such member remains unrepentant, the elders will follow our Lord’s instructions from Matthew 18:15-20.  If the member remains unrepentant and chooses not to resign, such member will be removed from membership.  This action will be announced to the congregation in a tenderhearted, discreet manner, followed by prayer, at the first appropriate Sunday service thereafter.  The goal of such discipline will be to encourage repentance and restoration of fellowship with the Lord and His people. 

In October 1999, Penley became a member of CCBC.  In a document titled “CrossLand Community Bible Church Questions for Membership,” Penley was asked to “[a]ffirm [her] willingness to abide by the constitution of this church (for example, with a ‘Yes, I willingly . . .‘ statement).”  On June 6, 2000, Penley wrote, “Sure, I can abide by the church constitution . . .  willingly.” 

B. Marital Counseling, Penley’s Resignation, and Church Discipline

In July 2000, Penley physically separated from her husband, Ben Stone, due to marital difficulties and discord.  Penley alleged that, at various relevant times, Westbrook provided secular professional counseling services to her and to Stone because of their need for marital and family counseling.  In her petition, Penley alleged that Westbrook “held himself out and represented that he was qualified by education, training, and experience to provide professional marriage and family counseling, as a professional marriage and family counselor.”  Penley alleged that during various sessions with Westbrook, he “gained [her] trust and confidence” and “engaged in secular professional marriage and family counseling” services.  

The counseling services and efforts were unsuccessful, and Penley decided to seek a divorce from Stone.  Around October 22, 2000, Penley told Westbrook of her decision concerning her marriage, and Westbrook counseled her and recommended a family law attorney with whom Penley could consult. According to Penley, “Westbrook [also] made other statements and representations to her.”  Penley asserts that she responded by “positively and affirmatively terminat[ing] her membership in . . . CCBC by informing [Westbrook] of her resignation from the membership of CCBC.” 

Penley alleges that, despite her resignation from CCBC, Westbrook met with church elders Young, Thatcher, and Johnson to write a letter concerning her actions and responsive church discipline to be published to CCBC’s congregation.  Westbrook and the elders later published a letter, dated November 7, 2000, to the members of CCBC.  In the letter, Westbrook and the elders informed the congregation that Penley intended to divorce her husband, that there was no biblical basis for the divorce, and that she had engaged in a “biblically inappropriate” relationship with another man. 

The letter described Penley’s disciplinary process as one of “tough-love” and a “painful consequence that our Lord commands to ‘win’ [her], to bring [her] back to the Lord in a full sense and back to [her] family who deeply love[s] [her].”  The letter also referenced the church disciplinary process by which all members are bound, discussed the church’s biblical basis for disciplining a wayward church member like Penley, and encouraged the church body “to shun” Penley for the purpose of obtaining her repentance and restoration to the church.  The letter specifically admonished the membership to treat the matter as a “members-only issue, not to be shared with those outside our family” and “to not gossip or judge.”  Penley and Stone eventually divorced on March 28, 2001. 

II.  Procedural History

On November 6, 2001, Penley sued CCBC, Westbrook, Young, Thatcher, and Johnson, alleging causes of action for defamation, breach of fiduciary duty, and intentional infliction of emotional distress.  Penley sought actual and exemplary damages for injuries she allegedly sustained as a result of the Defendants’ actions.  Westbrook, the three elders, and CCBC filed general denials, special exceptions, pleas to the trial court’s jurisdiction, and motions to dismiss for lack of subject matter jurisdiction, asserting that the First Amendment as incorporated through the Fourteenth Amendment deprived the trial court of any jurisdiction to adjudicate what they characterized as an “ecclesiastical dispute concerning an intra-church disciplinary matter.”  
See
 
U.S. Const
. amends I, XIV.

Penley attempted to conduct discovery on her claims by moving for discovery under a Level 3 discovery control plan and a scheduling order under rules 166 and 190.4 of the Texas Rules of Civil Procedure.  
See 
Tex. R. Civ. P.
 166, 190.4.  On February 25, Penley filed notices of her intention to take the depositions of Westbrook, Young, Thatcher, and Johnson, individually and as representatives of CCBC.  Penley also served subpoenas on the Defendants to testify at the hearing on the Defendants’ motions to dismiss for lack of subject matter jurisdiction.  All of the Defendants filed motions to quash Penley’s subpoenas, to quash Penley’s deposition notices, and for protective orders pending a hearing on the trial court’s jurisdiction.  Penley responded and filed a motion to compel the oral depositions of the Defendants. 

Thereafter, Penley amended her petition twice and added two more causes of action:  invasion of privacy and negligence.  In response, the Defendants filed several defensive pleadings, arguing, in part, that because Penley’s claims were ecclesiastical in nature, the trial court lacked subject matter jurisdiction over her suit.  Westbrook did not file any special exceptions to Penley’s amended pleadings.
(footnote: 1)  On June 7, 2002, the trial conducted a hearing on the Defendants’ jurisdictional challenges. 

During the hearing, each side presented an opening statement.  Penley next attempted to call Westbrook to testify, but he objected on the basis that, because the court was determining a question of jurisdiction as it related to the free exercise clause, Penley was not entitled to discovery or cross-examination of Westbrook.  After considering arguments by each side, the court sustained Westbrook’s objection and refused to permit Penley to question Westbrook.  Penley then called elders Young, Thatcher, and Johnson to the stand, but the trial court sustained their objections, which were the same as Westbrook’s objection, and did not allow them to testify.  The trial court also rejected Penley’s attempt to call the four church leaders as representatives of CCBC. 

As Penley was about to take the stand to offer testimony, Westbrook objected and again argued that the trial court was constrained by the pleadings in determining the jurisdiction issue and could not receive her testimony.  The trial court sustained Westbrook’s objection.  Penley then asked the court to allow her to call Westbrook, Young, Thatcher, and Johnson to make a bill of exception, but the court sustained the Defendants’ objections and disallowed Penley from making a bill of exception. 

Penley sought to take the stand for the purpose of making a bill of exception with respect to her own testimony.  The court allowed Penley to make a bill of exception, and Westbrook’s counsel also cross-examined her.  Both sides presented further argument to the court concerning the Defendants’ jurisdictional challenges, and the trial court determined that it did not have jurisdiction over Penley’s claims.  On June 24, 2002, the trial court signed an order of dismissal, which found that the court had no subject matter jurisdiction over the claims Penley asserted against CCBC, Westbrook, Young, Thatcher, and Johnson.  In its order, the court also granted the Defendants’ motions to quash Penley’s deposition notices and subpoenas and protected the Defendants from discovery.  The court then dismissed all of Penley’s claims against all of the named Defendants. 

III.  Scope of Appeal

Penley appealed the trial court’s dismissal order as to all of the named Defendants, but on February 6, 2003, we granted Penley’s unopposed motion to dismiss Appellees CCBC, Young, Thatcher, and Johnson.  
See Penley v. CrossLand Cmty. Bible Church
, No. 2-02-260-CV, 2003 WL 253369, at *1 (Tex. App.—Fort Worth Feb. 6, 2003, no pet.) (memo. op.).  Thus, this appeal only concerns the claims Penley asserted and now challenges with respect to Westbrook.

In the trial court, Westbrook’s plea to the jurisdiction and motion to dismiss for lack of subject matter jurisdiction addressed Penley’s five causes of action against him.  The trial court granted Westbrook relief on all claims. Westbrook points out that, in this appeal, Penley has only argued and briefed that the trial court has subject matter jurisdiction over her professional negligence claim and that her original brief contains no argument concerning her defamation, breach of fiduciary duty, intentional infliction of emotional distress, and invasion of privacy causes of action.
(footnote: 2)  Indeed, it is only in her reply brief that Penley attempts to challenge the dismissal of those four claims. 

A reply brief may not be used to raise new complaints.  
Tex. R. App. P
. 38.3; 
In re M.D.H.
, No. 2-03-112-CV, 2004 WL 362224, at *3 (Tex. App.—Fort Worth Feb. 26, 2004, no pet.) (memo op. on reh’g); 
Barrios v. State, 
27 S.W.3d 313, 321-22 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. ref’d), 
cert. denied
, 534 U.S. 1024 (2001).  The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee’s briefs but not raised by the appellant’s original brief.  
M.D.H.
, 2004 WL 362224, at *3; 
In re A.M.
, 101 S.W.3d 480, 486 (Tex. App.—Corpus Christi 2002, pet. filed).  Thus, we agree with Westbrook that Penley has waived her complaints as to the dismissal of her four non-negligence causes of action.  
See
 
Tex. R. App. P.
 38.1(h), 38.3; 
M.D.H.
, 2004 WL 362224, at *3;
 Livecchi v. City of Grand Prairie
, 109 S.W.3d 920, 921-22 (Tex. App.—Dallas 2003, pet. filed); 
see also Turner v. Church of Jesus Christ of Latter-Day Saints
, 18 S.W.3d 877, 896-97 (Tex. App.—Dallas 2000, pet. denied) (holding that failure to challenge on appeal claims disposed of by summary judgment results in a waiver of appellate review of those claims), 
cert. denied
, 533 U.S. 951 (2001).

IV.  Issues on Appeal

Penley complains in three issues that the trial court had subject matter jurisdiction over her professional negligence claim against Westbrook and therefore erred in dismissing that claim on the basis that it was barred by the First Amendment as applied to the States through the Fourteenth Amendment to the United States Constitution.
(footnote: 3)  In her first issue, Penley contends that the trial court erred in dismissing her professional negligence claim against Westbrook because her claim is one for professional negligence, as opposed to clergy malpractice, and she specifically alleged in her pleadings that Westbrook is a licensed professional counselor and that her claim arises from counseling that was secular in nature.  In her second issue, Penley alternatively argues that, if the trial court could not determine from her pleadings whether it had subject matter jurisdiction over her professional negligence claim against Westbrook, the court should not have dismissed that claim, but should have allowed her the opportunity to amend her pleadings.  Finally, Penley asserts that the trial court abused its discretion by refusing to allow Westbrook’s and Penley’s testimony during the hearing on Westbrook’s motion to dismiss. 
A.  Plea to Jurisdiction

“Subject matter jurisdiction is never presumed and cannot be waived.” 
Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 443-44 (Tex. 1993).  The question of subject matter jurisdiction is a legal question, which we review de novo.  
Mayhew v. Town of Sunnyvale, 
964 S.W.2d 922, 928 (Tex. 1998), 
cert. denied
, 526 U.S. 1144 (1999).  The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction, as Westbrook has done in this case.  
See Tex. Dep’t of Parks & Wildlife v. Miranda
, No. 01-0619, 2004 WL 726901, at *11 (Tex. Apr. 2, 2004);
 Bland Indep. Sch. Dist. v. Blue
, 34 S.W.3d 547, 554 (Tex. 2000).  Further, a party may utilize a plea to the jurisdiction when religious liberty grounds form the basis for the jurisdictional challenge.
  See Green v. United Pentecostal Church Int’l
, 899 S.W.2d 28, 30 (Tex. App.—Austin 1995, writ denied), 
cert. denied
, 517 U.S. 1134 (1996);
 Patterson v. Southwestern Baptist Theological Seminary
, 858 S.W.2d 602, 604-05 (Tex. App.—Fort Worth 1993, no pet.).

A plea to the jurisdiction is a dilatory plea by which a party challenges a court’s authority to determine the subject matter of an action.  
Bland
, 34 S.W.3d at 554.  The purpose of a dilatory plea is not to force the plaintiff to preview her case on the merits but to establish a reason why the merits should never be reached.  
Id.
  Thus, our task is not to decide the merits of Penley’s case but rather to examine the claims in her pleadings, taking as true the facts pled, to determine whether those facts support jurisdiction in the trial court.  
See Osburn v. Denton County
, 124 S.W.3d 289, 292 (Tex. App.—Fort Worth 2003, pet. filed).

“When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate 
the court’s jurisdiction to hear the cause.”  
Miranda
, 2004 WL 726901, at *6; 
see also Tex. Natural Res. Conservation Comm’n v. White, 
46 S.W.3d 864, 868 (Tex. 2001); 
Bland, 
34 S.W.3d at 555.  We must construe the pleadings in the plaintiff’s favor and look to the pleader’s intent.  
Miranda
, 2004 WL 726901, at *6; 
County of Cameron v. Brown, 
80 S.W.3d 549, 555 (Tex. 2002); 
Peek v. Equip. Serv. Co., 
779 S.W.2d 802, 804 (Tex. 1989).  “If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[’]s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.”  
Miranda
, 2004 WL 726901, at *6.  A trial court may grant a plea to the jurisdiction without allowing the pleader an opportunity to amend if the pleadings negate the existence of jurisdiction.  
Id
.

On the other hand, “if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.”  
Id
. (citing 
Bland
, 34 S.W.3d at 555).  When the trial court is required to examine evidence to determine its subject matter jurisdiction, “the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable.”  
Id
. (citing 
Bland
, 34 S.W.3d at 554).  In cases “in which the jurisdictional challenge implicates the merits of the plaintiffs’ cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists.”  
Id
.  
Miranda
 concludes:

[if] the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder.  However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

Id
.

B.  Penley’s Pleadings

In her first issue, Penley asserts that the trial court erred in dismissing her professional negligence claim against Westbrook.  Westbrook responds that the trial court properly dismissed Penley’s claim for lack of subject matter jurisdiction because the First Amendment prohibits judicial review of ecclesiastical disputes such as the religious disciplinary action made the basis of her claims.  By asserting that the trial court properly dismissed all of Penley’s claims because they were derived 
solely
 from the Defendants’ drafting and publication of the disciplinary letter, conduct that Westbrook contends was “clearly ecclesiastical in nature, regardless of the claims alleged,” Westbrook’s plea to the jurisdiction challenges Penley’s pleadings and not the existence of jurisdictional facts. 
 See id
. 

Thus, under 
Miranda
, we examine the substance and effect of Penley’s pleadings to determine whether she alleged sufficient facts that affirmatively demonstrate the court’s jurisdiction to hear her professional negligence claim against Westbrook.  
See id
. (citing 
Tex. Ass’n of Bus.
, 852 S.W.2d at 446).  Penley alleged in her second amended petition:

III.  JURISDICTION AND VENUE

. . . . 

B.
 
Jurisdiction Over Subject Matter
.  The Court has jurisdiction over the subject matter of the controversy in this case.  Specifically, the Court has subject matter jurisdiction in this case because:

. . . .

a.
 “Defendant[] Westbrook . . . existed and functioned within the civil community, and, thus [is] amenable to the laws and rules governing property rights, torts, and criminal conduct.  Thus, the Defendant[] . . . Westbrook . . . [is] subject to the Texas civil liability laws, including . . . negligence[] and other forms of torts or civil wrongs.

b.
 The subject matter of the Plaintiff Penley’s claims and causes of action for damages against the Defendant[] . . . Westbrook . . . is not strictly and purely “ecclesiastical” in nature and the Plaintiff Penley’s claims for damages against the Defendant[] . . . Westbrook . . . are neither outside the subject matter jurisdiction of the Court nor barred by the religion clauses of the First Amendment as incorporated in the Fourteenth Amendment to the United States Constitution. 

. . . .

IV.  FACTUAL BACKGROUND

. . . .

B.
 From October 1999 to November, 2000, the Defendant Westbrook was the Pastor of the CCBC.  Over this same period of time, Defendant Westbrook was a professional counselor licensed in Texas and he engaged in the practice of providing secular professional marriage and family counseling services to and for various individuals, including counseling services to husbands and wives relating to marital difficulties or discord.  At various relevant times hereto, Defendant Westbrook engaged in secular professional marriage and family counseling of Plaintiff Penley.  Defendant Westbrook held himself out and represented that he was qualified by education, training, and experience to provide professional marriage and family counseling, as a professional marriage and family counselor, Westbrook entered into a counseling relationship with Penley, acquired influence, and gained Penley’s trust and confidence during his professional counseling relationship with her, and he expressed love and affection for her.  As a result of these circumstances, the Defendant Westbrook is not entitled to assert any protection by the First Amendment to the United States Constitution for his conduct, statements, and representations in the course of providing secular counseling to and for Elizabeth Penley, and he was required to meet the reasonable and prudent standards of case [sic] applicable to any family or marital counselor under the same or similar circumstances. 

. . . .

IX.  COUNT 5 - NEGLIGENCE OF DEFENDANTS

. . . .

B. Negligence of Defendant Westbrook.
  On the occasions in question in this case, Defendant Westbrook had a duty under Texas law to exercise ordinary care and act as a family counselor of reasonable and ordinary prudence under the same or similar circumstances in his family counseling services, advice, statements, and representations to and/or for Peggy Lee Penley.  Defendant Westbrook breached that duty by committing one or more of the following acts or omissions of negligence, which was a proximate cause of the occurrence, injuries, and/or damages in question:

In that Westbrook negligently failed to provide proper counseling services, advice, statements, and representations to and for Peggy Penley;

In that Westbrook negligently failed to provide adequate counseling services, advice, statements, and representations to and for Peggy Lee Penley;

In that Westbrook negligently failed to provide safe counseling services, advice, statements, and representations to and for Peggy Lee Penley;

In that Westbrook negligently made misrepresentations and statements to and about Peggy Lee Penley;

In that Westbrook negligently engaged in other inappropriate conduct and comments with his counseling services, advice, statements, and representations to, for, and about Peggy Lee Penley. 

We agree with Penley that her pleadings, as quoted above, set forth sufficient factual allegations to support her professional negligence claim against Westbrook and do not otherwise affirmatively demonstrate incurable defects concerning the trial court’s jurisdiction.  
See id
.  In his brief, Westbrook argues that the trial court properly determined that it lacked subject matter jurisdiction over all of Penley’s claims, including her claim of professional negligence against him.  This argument is built on the faulty foundation that all of Penley’s claims stem from a single religious act, that being the publication of the November 2002 disciplinary letter as part of CCBC’s membership policy.  
See, e.g
., 
Dean v. Alford
, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.) (“[T]he First Amendment prohibits civil courts from intruding into the church’s governance of ‘religious’ or ‘ecclesiastical’ matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality.”) (citing 
Serbian E. Orthodox Diocese v. Milivojevich
, 426 U.S. 696, 708-09, 724-25, 96 S. Ct. 2372, 2380, 2387-88 (1976)).

“The Free Exercise Clause never has immunized clergy or churches from all causes of action alleging tortious conduct,” and it “do[es] not necessarily bar all claims which may touch on religious conduct.”  
Tilton v. Marshall
, 925 S.W.2d 672, 677 (Tex. 1996) (citations omitted); 
In re Pleasant Glade Assembly of God
, 991 S.W.2d 85, 89 (Tex. App.—Fort Worth 1998, orig. proceeding); 
see also
 
Cantwell
, 310 U.S. at 303-04, 60 S. Ct. at 903 (stating that while the freedom to believe is absolute, the freedom to act “remains subject to regulation for the protection of society”).  We disagree with Westbrook’s argument on appeal because it focuses solely on the letter and the disciplinary process of the church; whereas, Penley’s second amended petition alleges facts and conduct independent of CCBC’s disciplinary process, which if taken as true, support Penley’s complaints that Westbrook was negligent in providing her 
secular
 professional counseling.  
See Miranda
, 2004 WL 726901, at *6; 
Tex. Ass’n of Bus.
, 852 S.W.2d at 446; 
see, e.g.
, 
Tilton
, 925 S.W.2d at 679 (grouping plaintiffs’ fraud claims against minister into two categories and stating that fraud claims arising from alleged promises to perform particular acts, which are matters other than faith or experience, did not “infringe upon [the minister’s] constitutional rights” and thus may be actionable) (plurality op.); 
Hawkins v. Trinity Baptist Church
, 30 S.W.3d 446, 452 (Tex. App.—Tyler 2000, no pet.) (noting that Texas does not recognize cause of action for “clergy malpractice” but that the First Amendment does not extend to insulate “secular component[s]” of otherwise religious relationships) (citation omitted); 
Sanders v. Casa View Baptist Church
, 134 F.3d 331, 337-38 (5th Cir.) (allowing plaintiff’s claims for professional negligence against minister acting as secular counselor), 
cert. denied
, 
Baucum v. Sanders
, 525 U.S. 868 (1998); 
Dausch v. Rykse
, 52 F.3d 1425, 1435 (7th Cir. 1994) (Ripple, J., concurring and dissenting) (permitting plaintiff’s professional negligence claim against minister for conduct as secular counselor); 
Odenthal v. Minn. Conference of Seventh-Day Adventists
, 649 N.W.2d 426, 441 (Minn. 2002) (holding trial court had jurisdiction to adjudicate church member’s negligent secular counseling claim against church minister); 
Barnes v. Outlaw
, 937 P.2d 323, 327-28 (Ariz. Ct. App. 1996) (allowing claim for counseling malpractice against church pastor), 
vacated in part on other grounds
, 964 P.2d 484 (Ariz. 1998).

We conclude that Penley pled a viable claim involving Westbrook’s alleged breach of duty in his secular counseling role that does not implicate the propriety of CCBC’s disciplinary action.  Thus, Penley’s professional negligence claim against Westbrook does not require a judicial review of such issues as the decision to discipline her, whether Westbrook followed the church constitution in disciplining her, or how to properly interpret the statement that she “engage[d] in a biblically inappropriate relationship with another man.”  Instead, as Penley suggests in her brief, a fact finder will resolve such issues as whether Westbrook obtained confidential information from Penley while in the context of a secular counseling relationship and whether, without obtaining proper consent, he disclosed such information to outside parties. 

Westbrook argues that Penley raises a “new” professional negligence claim on appeal because her brief references regulatory and statutory duties of confidentiality imposed on licensed professional counselors in Texas not alleged in her pleadings.  We disagree with Westbroook’s characterization of Penley’s argument on appeal as raising a “new” professional negligence claim.

Texas follows a “fair notice” pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial.  
See Miranda
, 2004 WL 726901, at *9-10 (plurality op.); 
Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 896 (Tex. 2000).  “A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim.”   
Auld
, 34 S.W.3d at 897 (quoting 
Roark v. Allen
, 633 S.W.2d 804, 810 (Tex. 1982));
 see
 
Tex. R. Civ. P
. 47 (providing that a pleading setting forth a claim for relief must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, a statement that the damages sought are within the jurisdictional limits of the court, and a demand for judgment).  A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged.  
Boyles v. Kerr
, 855 S.W.2d 593, 601 (Tex. 1993).

Here, Penley pled that Westbrook held himself out as a licensed professional counselor,
(footnote: 4) engaged in secular counseling with Penley, and was bound by reasonable and prudent standards of care applicable to licensed counselors in Texas.  We hold that, in the context of Penley’s professional negligence claim, the allegations in Penley’s second amended petition were broad enough to encompass Penley’s claim that Westbrook’s secular counseling to her fell below the standards of care set forth in the TLPCA and other governing administrative regulations.  
See 
Tex. Occ. Code. Ann
. § 503.001 et seq. (Vernon 2004); 22 
Tex. Admin. Code
. § 681 (2004) (governing professional counselors).

Westbrook also argues that to the extent the regulations and statutes applicable to licenced professional counselors apply to Westbrook in his “pastoral capacity,” they impose an impermissible and unconstitutional burden on his First Amendment rights.  This argument fails because Penley is not arguing that Westbrook committed clergy malpractice or that he was otherwise negligent while providing
 pastoral
 counseling.  
See generally Hawkins
, 30 S.W.3d at 453; 
see also 
Tex. Occ. Code Ann
. § 503.054(2).  Rather, Penley alleges that Westbrook provided negligent 
secular
 counseling to and for Penley and that his counseling services fell below the reasonable and prudent standards of care applicable to any licensed professional counselor under the same or similar circumstances. 

On the record before us, based on Penley’s allegations that are not disputed by Westbrook, Westbrook functioned in three capacities at various relevant times in his relationship with Penley.  
See generally Destefano v. Gabrian
, 763 P.2d 275, 285 n.10 (Colo. 1988) (citing four articles that discuss the interrelation between clergy and secular counseling).  Penley stated that Westbrook was her friend, her pastor, 
and
 her professional counselor.  Penley’s professional negligence claim is not based on the first two roles, but rather on the third.  We therefore reject Westbrook’s argument that the regulations and statutes applicable to licenced professional counselors impose an impermissible and unconstitutional burden on his First Amendment rights as they apply to him in his “pastoral capacity” because Penley’s professional negligence claim concerns Westbrook in his role as Penley’s secular professional counselor.
(footnote: 5)
 Upon our examination of Penley’s pleadings, taking as true the factual allegations pled, but without deciding the merits of her case, we conclude that the trial court erred in concluding that it lacked subject matter jurisdiction over Penley’s professional negligence claim against Westbrook.  
See Miranda
, 2004 WL 726901, at *6; 
Osburn
, 124 S.W.3d at 292.  Accordingly, we sustain Penley’s first issue.
(footnote: 6)
VI.  Conclusion

Having sustained Penley’s first issue, we reverse the trial court’s dismissal for want of subject matter jurisdiction with respect only to her professional negligence claim against Westbrook and remand that claim for a trial on the merits.  We affirm the trial court’s dismissal in all other respects.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  May 20, 2004

FOOTNOTES
1:
CCBC, Young, Thatcher, and Johnson, in their first amended original answer, included a plea to the jurisdiction and special exceptions to Penley’s first amended petition.  The trial court, however, never ruled on these Defendants’ special exceptions. 

2:
For example, Penley characterizes her suit as a “professional negligence action” in her summary of the argument.  After a section concerning the scope and standard of review, Penley’s brief contains the following heading:  The First Amendment does not insulate Westbrook from Penley’s claims for professional negligence.”  Moreover, at the end of that section, Penley urges us to “reverse the dismissal and remand Penley’s negligence claims against Westbrook for trial.” 

3:
The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, states, “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.”  
U.S. Const
. amends. I, XIV; 
see Cantwell v. Connecticut
, 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940).  Because Westbrook did not assert a religious liberty defense under article I, section 6 of the Texas Constitution, we only address Penley’s issues under the federal constitutional guaranties.  
See
 
U.S. Const.
 amends. I, XIV; 
Tex. Const.
 art. I, § 6.

4:
According to the
 Texas Licensed Professional Counselor Act
 (TLPCA), a

“[l]icensed professional counselor” means a person who holds a license issued under this chapter and who:

(A) represents the person to the public by any title or description of services incorporating the words “licensed counselor” and offers to provide professional counseling services to any individual, couple, family, group, or other entity for compensation, implying that the person offering the services is licensed and trained, experienced, or expert in counseling; or

(B) engages in any practice of counseling.  

Tex. Occ. Code Ann
. § 503.002(4) (Vernon 2004).  Further, the TLPCA provides for counseling by religious practitioners as follows:

This chapter does not apply 
to an activity or service of any of the following persons performing counseling consistent with the law of this state, the person’s training, and any code of ethics of the person’s profession 
if the person does not represent the person by any title or description as described by the definition of “licensed professional counselor” 
in Section 503.002 . . . a recognized religious practitioner, including a Christian Science practitioner recognized by the Church of Christ Scientist as registered and published in the Christian Science Journal. 

Id
. § 503.054(2) (emphases supplied).

5:
As Judge Ripple observes in 
Dausch
, “[f]ew would doubt . . . that a lawyer practicing in a legal clinic operated by a church or a physician practicing in a clinic under church auspices would have to comply with the same standards of professional care and responsibility as any other law firm or medical facility.”  52 F.3d at 1425 (Ripple, J., concurring and dissenting).

6:
In light of our disposition on Penley’s first issue, it is unnecessary to address the remainder of Penley’s issues.  
See 
Tex. R. App. P.
 47.1 (stating opinion need only address every issue necessary to final disposition of the appeal).