NO. 07-04-0541-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



OCTOBER 19, 2005


______________________________



MARSHALL CROSS, DANNY JOHNSON and LISA JOHNSON, 


 

 Appellants


v.



ORIGEN FINANCIAL, LLC f/k/a DYNEX FINANCIAL, INC., 



 Appellee

_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 51,823-B; HON. JOHN B. BOARD, PRESIDING


_______________________________



On Motion for Rehearing


_______________________________


Before QUINN, C.J., REAVIS and CAMPBELL, JJ.

 Pending before the court is the motion of Marshall Cross, Danny Johnson and Lisa
Johnson (collectively referred to as Cross) for rehearing. Cross again raises the contention
of "trial by consent" and posits that we erred in concluding that they had not preserved the
issue for our review. We overrule the motion.

 While the subject was first broached in the reply brief of Cross it went unmentioned
in their appellants' brief. Furthermore, authority holds that issues raised for the first time
in a reply brief generally may not be considered. Bankhead v. Maddox, 135 S.W.3d 162,
163-64 (Tex. App.-Texarkana 2004, no pet.); Krumb v. Porter, 152 S.W.2d 495, 496-97
(Tex. Civ. App.-San Antonio 1941, writ ref'd); see Penley v. C.L. Westbrook, Jr., 146
S.W.3d 220, 227 (Tex. App.-Fort Worth 2004, pet. filed) (holding that the Texas Rules of
Appellate Procedure do not allow an appellant to include in a reply brief a new issue in
response to some matter pointed out in the appellee's briefs but not raised by the
appellant's original brief). Moreover, even if we had the authority to consider the claim, our
review of the record reveals it to be meritless. 

 Accordingly, we overrule Cross' motion for rehearing.


 Per Curiam


 



ose();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-08-0119-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C 

JULY 7, 2009

______________________________


PHILLIP W. MORRIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-410,322; HONORABLE CECIL G. PURYEAR, JUDGE




_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


          Appellant, Phillip W. Morris, was convicted by a jury of assault of a family member
enhanced and sentenced to eight years confinement. In a single issue, he contends the
State’s evidence is legally insufficient to support his conviction. We affirm.
Background
          On September 28, 2005, a Lubbock County Grand Jury returned an indictment
charging Appellant with assault of a family member, enhanced by a prior conviction of
assault of a family member, making his offense a third-degree felony.


 See Tex. Penal
Code Ann. § 22.01(a) & (b) (Vernon Supp. 2008). The indictment alleged that, on
February 16, 2005, Appellant assaulted his wife, Theresa Morris, by choking her, biting her,
causing her to strike the floor, shaking her, and squeezing her arms. 
          At trial, D’Jane Brown testified that, on February 16, 2006, she lived across the
street from the Morris residence. That afternoon, she went to the front door facing the
street when she heard a commotion. She observed Appellant’s wife, Theresa Morris,
crossing the street followed by Appellant. Appellant was angry and arguing with his wife. 
Appellant pushed Theresa down to the ground and, after Theresa rose to her feet, they
argued in a neighbor’s yard. Afterwards, they went back into their house. Shortly
thereafter, Theresa emerged from the house holding a puppy and hobbling. Appellant also
emerged and was gesturing with his arms. She heard Theresa say loudly: “Just take me
to the hospital.” Appellant yelled: “No.” Theresa then entered the car and moved quickly
across the front seat to the passenger side attempting to leave the car. Appellant grabbed
her by the hair and pulled her down onto the seat. Brown could see Appellant hovering
over her in the car. When Brown saw Theresa’s leg come up but could not see the rest
of her body, she became frightened for Theresa’s safety and called 911. 
          Theresa testified that she and Appellant had been together for seventeen years and
had two sons, age fifteen and thirteen. She testified that she and Appellant were laying
around the house when he grabbed their new puppy. He held the puppy “real tight.” She
began to cry and asked him to stop. Appellant held the puppy more tightly. She rose to
leave telling him: “I don’t want to see this. I just don’t want to hear it. Just let her go.” She
testified that he never hurt the dogs–it was like a “bully thing.” As she was attempting to
leave the room, Appellant picked her up and threw her backwards. When she hit the floor,
something in her back popped. She told him: “This time it’s really hurt me. You hurt me
this time.” 
          Thereafter, she testified Appellant then picked her up and began shaking her up and
down. She wanted him to let her go but he continued shaking her saying,” I’m going to fix
it, I’m going to fix it.” She then exited the house and was getting into the car to go to the
hospital when, according to her testimony, he insisted that he take her to the hospital. 
They began to argue and Appellant choked her with both hands while she was in the car. 
As a result, she almost stopped breathing. She testified that she sustained injuries from
Appellant throwing her on the floor, choking her, squeezing her in a bear hug numerous
times, and shaking her.
          Theresa also testified that Appellant injured her because he was angry. She
testified that he was extremely bipolar and had been suffering from the mental illness for
eighteen years. On February 16, she could tell that he was being affected by his illness
because he had a blank look–“like he [didn’t] know what he [was] doing.” She testified that,
after these episodes, he couldn’t recall what he had done. She testified his doctor was
prescribing the wrong medications for him and that she hid his medication because he was
suffering side effects such as seizures, back pain, and liver problems. Usually, when she
could tell he was being affected by his mental illness, she would leave as quickly as
possible. She testified that, on February 16, she just did not leave fast enough.
          Rick Lewis, a corporal for the Slaton Police Department, testified he responded to
Brown’s 911 call. When he arrived at the Morris residence, he observed Theresa crying
uncontrollably in a car parked in the driveway. Although Theresa claimed she had fallen,
he was skeptical. Theresa was having a hard time standing or moving and he observed
a knot on her head about the size of an egg. There was also a knot over her eye. At first,
she screamed that Appellant’s mother would be mad at her if Appellant went back to prison
for what he had done to her. She then jumped up and started screaming that Appellant
was going to pay for what he had done to her. She told Officer Lewis that Appellant had
bitten her on the top of the head, choked her, picked her up in a bear hug, and shook her
violently two or three times, and slammed her onto the floor on her back. Officer Lewis
placed Appellant under arrest. 
          Tad Ellis, detective and felony investigator for the Slaton Police Department, arrived
at the Morris residence after Lewis. He testified Theresa was crying and complaining of
lower back pain. At one point, Theresa became confrontational with Appellant and yelled
that she was not going to take it anymore. She also told Detective Ellis that she did not
want to press charges. He testified that it was not uncommon for a victim of domestic
violence to not want to press charges. 
          The jury convicted Appellant of the charges in the indictment, the trial court
assessed punishment, and this appeal followed.
Discussion
          Appellant contends the State failed to offer legally sufficient evidence to establish
beyond a reasonable doubt that Appellant engaged in the assaultive conduct voluntarily
and with the requisite culpable mental state. Appellant asserts he was unaware of his
actions due to a bipolar episode which was precipitated by being deprived of his
medications by his wife. Accordingly, he contends that his actions were involuntary and
that he lacked the requisite criminal intent. 
 

          I.        Standard of Review - Legal Insufficiency
          It is a fundamental rule of criminal law that one cannot be convicted of a crime
unless it is shown beyond a reasonable doubt that the defendant committed each element
of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03
(Vernon Supp. 2008); Tex. Penal Code Ann. § 2.01 (Vernon 2007). In a sufficiency of the
evidence review, the essential elements of the offense are those of a hypothetically correct
jury charge for the offense in question (i.e., one that accurately sets out the law and
adequately describes the offense for which the appellant was tried without increasing the
state’s burden of proof or restricting the state’s theory of criminal responsibility). Hooper
v. State, 214 S.W.3d 9, 14 (Tex. 2007); Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). 
          In assessing the legal sufficiency of the evidence to support a criminal conviction,
a reviewing court must consider all the evidence in the light most favorable to the verdict
and determine whether, based on that evidence and reasonable inferences to be drawn
therefrom, a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d
560 (1979); Hooper, 214 S.W.3d at 13. In our analysis, we must give deference to the
responsibility of the jury to fairly resolve conflicts in testimony, weigh the evidence, and
draw reasonable inferences from that evidence. Id. 
           
          Circumstantial evidence alone is sufficient to establish an element of the offense
and the sufficiency standard of review is the same for both direct and circumstantial
evidence cases. Hooper, 214 S.W.3d at 13. Each fact need not point directly and
independently to the guilt of the accused, so long as the cumulative force of the probative
evidence, when coupled with reasonable inferences to be drawn therefrom, is sufficient to
support the conviction. Evans v. State, 202 S.W.3d 158, 166 (Tex.Crim.App. 2006).
          II.       Legal Sufficiency–Assault of a Family Member
          A person commits the offense of assault of a family member if he or she 
intentionally, knowingly, or recklessly caused bodily injury to a family member. See Tex.
Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2008).


 Because the statute expresses
three culpable mental states in the disjunctive, proof of any one of the three is sufficient
to support a conviction. Perez v. State, 704 S.W.2d 499, 501 (Tex.App.–Corpus Christi
1986, no pet.).
          “A person acts intentionally, or with intent, with respect to . . . a result of his conduct
when it is his conscious objective or desire to . . . cause the result.” Tex. Penal Code Ann.
§ 6.03(a) (Vernon 2003). “A person acts knowingly, or with knowledge, with respect to a
result of his conduct when he is aware that his conduct is reasonably certain to cause the
result.” Tex. Penal Code Ann. § 6.03(b) (Vernon 2003).


 A culpable mental state may be
inferred from circumstantial evidence such as acts, words, and conduct of the defendant
and surrounding circumstances. Guevara v. State, 152 S.W.3d 45, 50 (Tex.Crim.App.
2004). 
          “Texas law, like that of all American jurisdictions, presumes that a criminal
defendant is sane and that he intends the natural consequences of his acts.” Ruffin v.
State, 270 S.W.3d 586, 592 (Tex.Crim.App. 2008). Further, Texas does not recognize
diminished capacity as an affirmative defense, i.e., a lesser form of the defense of insanity. 
Jackson v. State, 160 S.W.3d 568, 573 (Tex.Crim.App. 2005).


 The diminished capacity
doctrine at issue here is “simply a failure-of-proof defense in which [Appellant] claims that
the State failed to prove that [he] had the required state of mind at the time of the offense.” 
Id. This doctrine does not permit the defense to argue that he does not have the capacity,
or is absolutely incapable of forming the frame of mind. Id. at 574-75; Mays v. State, 3223
S.W.3d 651, 654 (Tex.App.–Texarkana 2007, no pet.). Rather, evidence of a mental
disease or defect may be offered to rebut or disprove the State’s evidence establishing the
defendant’s culpable mens rea. Ruffin, 270 S.W.3d 586; Jackson, 160 S.W.3d at 574-75. 
As with other evidence, it is up to the jury to hear the evidence, determine its weight, and
decide whether Appellant possessed the requisite mens rea to commit this offense. Id. at
574. 
          Here, Appellant argues that the State failed to offer any evidence he acted
voluntarily or possessed a culpable mental state. We disagree. Appellant’s initial violent
outburst was “set off” by Theresa’s reaction to an activity Appellant often engaged
in–bullying their dogs. Angered by her reaction, Appellant threw her against the floor. He
was aware of the fact that his actions caused Theresa injuries because, afterwards, he
tried to “fix it.” Thus, a jury could reasonably infer that Appellant was not under the
influence of a bipolar episode, but rather acted voluntarily and possessed a culpable
mental state. 
          When Theresa was able to exit the house, she testified that Appellant insisted that
he take her to the hospital. Another sign that he was aware of the consequences of his
actions, i.e., he had injured Theresa. When she refused his offer, he again became angry,
attacked her in the car, and began choking her. The impetus for this second attack being
her refusal to permit him to drive her to the hospital. Finally, after this attack, Theresa did
not blame Appellant’s bipolar condition when speaking with police officers but asserted she
had fallen, that Appellant’s mother would be mad if her son went to prison for what he had
done, and threatened that Appellant would pay for what he had done. 
          This evidence, when viewed in a light most favorable to the prosecution, is sufficient
to enable a rational jury to find, beyond a reasonable doubt, the essential elements of
assault of a family member. See Schumacher v. State, 814 S.W.2d 871, 873
(Tex.App.–Austin 1991, no pet.). Thus, the evidence is legally sufficient to support the
jury’s verdict of guilty.
          Appellant’s single issue is overruled.Conclusion
 
          The trial court’s judgment is affirmed.
 
 
Patrick A. Pirtle 

                                                                                 Justice 



Do not publish.