United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 28, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20358

_____

OSCAR DE LA HOYA; ANN M. THORPE; WILLIAM R. FAWTHROP;
CAROLYN RENEE FINCHER; WILLIAM LEE HUGHART; CHING
HUGHART; BRENT MCGILLIVRAY; JERRY MELCHIONNA;
STEVEN R. OFFERDAHL; LISA R. OSBORN-OFFERDAHL; JERRY
ROBINSON; JOHN T. SEACE; LISA SEACE; DEBRA TAYLOR;
STEVAN TAYLOR; GRETCHEN VIEHMANN; MONICA E. WOOLEY,

Plaintiffs-Appellants,

versus

COLDWELL BANKER MEXICO, INC., doing business as Coldwell
Banker Affiliates de Mexico; RICHARD A. SMITH, Individually;
COLDWELL BANKER REAL ESTATE CORPORATION; CENDANT
CORP.; COLDWELL BANKER AFFILIATES DE MEXICO SA DE CV,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. 4:02-CV-2951)

_____

Before REAVLEY, DeMOSS and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

This case arises from a series of real estate transactions in Mexico between 1999 and 2001. Plaintiffs engaged the services of a Coldwell Banker franchise there to buy or sell real estate and allege that the franchisee misappropriated their money from an escrow account. Plaintiffs originally filed suit in Texas state court and defendants removed on the basis of diversity. The district court denied plaintiffs' motion to remand to state court, finding that the non-diverse defendants had been improperly joined. The court then dismissed plaintiffs' claims against the diverse defendants for lack of personal jurisdiction and failure to state a claim. We vacate because the court lacked diversity jurisdiction.

## I. Background

Defendants in this case are Coldwell Banker Mexico, Inc. ("CBMI"), Coldwell Banker Affiliates de Mexico, S.A. de C.V. ("CBAM"), Coldwell Banker Real Estate Corporation ("CBREC"), and Richard A. Smith.[1] Richard Smith is president of both CBMI and CBAM. Smith also owns 100% of CBMI's shares and 1% of CBAM's shares. CBMI owns the remaining 99% of CBAM's shares.

CBMI and CBREC had a contract under which CBMI would act as CBREC's subfranchisor in Mexico. With CBREC's consent, CBMI assigned its

---

[1] Plaintiffs originally also sued Cendant Corporation. The district court dismissed this portion of the case for failure to state a claim, and plaintiffs do not appeal that order.

2

rights and duties under the subfranchise contract to CBAM in 1998.  In 1999, CBAM entered into a franchise agreement with Mañana Today S. de R.L. de C.V. ("Mañana Today"), a Mexican *sociedad de responsibilidad limitada de capital variable*.  Under the agreement, Mañana Today and its president, Luetta "LuLu" Jacobsen, would operate a Coldwell Banker franchise in Cabo San Lucas, Mexico called Coldwell Banker LuLu Jacobsen and Associates (the "Cabo franchise").  The franchise agreement provided that "[f]ranchised services shall not include the offering or performing of ancillary real estate services, including . . . escrow." However, Mañana Today could provide ancillary services as a separate business. CBAM retained the right to inspect, review, and audit all franchisee financial records, including those relating to ancillary services.  CBAM also retained the right to terminate the franchise for good cause.

Plaintiffs allege the following facts:  Between October 1999 and November 2001, plaintiffs each separately engaged the services of the Cabo franchise to buy or sell real estate located in Baja Mexico.  During the course of the real estate transactions and pursuant to instructions from franchise employees, they sent funds to an escrow account maintained by the Cabo franchise.  LuLu Jacobsen misappropriated funds from this account.  Defendants knew that Jacobsen had mishandled client funds in the past and that she was misappropriating funds between

3

1999-2001. Despite that knowledge, defendants failed to take action to prevent or remedy the situation by auditing the financial records of the Cabo franchise or terminating the franchise.

Plaintiffs brought suit in Texas state court, alleging common law and statutory negligence, gross negligence, breach of fiduciary duty, conversion, common law and statutory fraud, and breach of contract. Defendants removed, claiming that CBMI, CBREC, and Smith had been improperly joined to defeat diversity. Smith is a citizen of Texas. CBMI is also a citizen of Texas (principal place of business and incorporation in Texas). CBAM is a citizen of Mexico (principal place of business and incorporation in Mexico). CBREC is a citizen of California and New Jersey (incorporation in California, principal place of business in New Jersey). Plaintiffs are citizens of California, Ohio, North Carolina, Virginia, Minnesota, Washington, Texas, Florida, Mexico, and Canada. Thus, the inclusion of Smith, CBMI, or CBREC in the suit would destroy complete diversity.

The district court agreed with defendants and thus denied plaintiffs motion to remand to state court and dismissed CBMI, CBREC, and Smith. The court then granted CBAM's motion to dismiss for lack of personal jurisdiction. On plaintiffs' motion for reconsideration, the district court affirmed its prior orders. In addition, the court concluded that plaintiffs had failed to state a claim against CBAM. This

appeal followed. Plaintiffs contest the district court's findings that CBMI and Smith were improperly joined and its consequent failure to remand the case to state court. Plaintiffs also contest the district court's dismissal of CBREC as improperly joined in the "Statement of Jurisdiction" portion of their appellate brief. However, they fail to advance any support for this contention in that section or in the brief's "Argument" section. Thus, that issue is waived, and we consider only the joinder of CBMI and Richard Smith. *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1099 (5th Cir. 1991). We have jurisdiction over the district court's final order of dismissal under 28 U.S.C. § 1291.

## II. Subject Matter Jurisdiction

### A. Law of Improper Joinder

We review the district court's denial of plaintiffs' motion for remand to state court *de novo*. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). Where plaintiffs file in state court, defendants can remove on the basis of diversity only by establishing the prerequisites of 28 U.S.C. § 1332—complete diversity and amount in controversy exceeding $75,000. 28 U.S.C. §§ 1441(a), 1332. If non-diverse defendants are present, defendants must show that complete diversity exists by establishing that the non-diverse parties have been improperly joined. 28 U.S.C. § 1441(b); *Smallwood v. Ill. Cent. R.R. Co.*, 385

5

F.3d 568, 572-73 (5th Cir. 2004) (en banc). Defendants bear a "heavy burden" of showing improper joinder, but can do so by showing that: (1) plaintiffs fraudulently pleaded false jurisdictional facts, or (2) there is no reasonable basis on which the district court can predict that plaintiffs might be able to recover against the non-diverse defendants. *Id.* 573-74. In the present case, defendants do not contend that plaintiffs pleaded false jurisdictional facts. Thus, this court must determine whether defendants have carried their burden of showing that there is no reasonable basis on which the court can predict that plaintiffs might recover against CBMI and Richard Smith.

The court may resolve whether a plaintiff has a reasonable basis of recovery under state law by conducting "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the [non-diverse] defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[2] *Smallwood*, 385 F.3d at 573. A district court may not dismiss a complaint under 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[2] Plaintiffs contend that removal is improper unless "there is no possibility that the plaintiff can establish a cause of action against any of the Texas or California defendants under any theory of liability viable under applicable state law." This statement is misleading—we consider only whether plaintiffs can establish the theories of liability that they pleaded in the state court complaint. *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263-64 (5th Cir. 1995).

6

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although courts are limited to review of the complaint and attached papers when conducting a Rule 12(b)(6) inquiry, for purposes of determining improper joinder we may pierce the pleadings and consider summary judgment-type evidence. *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004). In reviewing that evidence and the complaint, we consider unchallenged factual allegations in the light most favorable to plaintiffs and resolve contested fact issues and ambiguities in controlling state law in plaintiffs' favor. *Id.*

Plaintiffs claim that CBAM (the Mexican, and thus diverse, defendant) is liable for failing to control the Cabo franchise's escrow activities despite its power to do so and its knowledge that Jacobsen was misappropriating funds. Plaintiffs then argue that CBMI and Smith are liable for CBAM's failure to act under the "single business enterprise" theory. Thus, plaintiffs' claims against the non-diverse defendant depend on the viability of their claims of single business enterprise and CBAM's liability.

B. <u>Defendants have not established that there is no reasonable basis for predicting plaintiffs' possible recovery against the non-diverse defendants</u>

The single business enterprise theory has been developed in the lower Texas state courts as an equitable veil-piercing theory. As one Texas Court of Appeals has phrased it, "when two corporations are not operated as separate entities but instead

7

integrate their resources to achieve a common business purpose, it may be equitable, under exceptional circumstances, to hold each constituent corporation liable for the debts and liabilities incurred in the common enterprise." *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 120 (Tex. Ct. App. 2001).

Defendants argue that plaintiffs did not plead single business enterprise liability in their complaint and thus cannot rely on it to defeat removal. *See Cavallini*, 44 F.3d at 263-64 (stating that a plaintiff cannot rely on a legal theory not advanced in their state court complaint to establish possible recovery against a non-diverse defendant). Indeed, plaintiffs did not expressly plead the single business enterprise theory in their complaint. Plaintiffs' failure to include the phrase "single business enterprise" in the complaint is not dispositive, however. Rather, we must determine whether what plaintiffs *did* plead was sufficient to allege single business enterprise. *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) (stating that, under Rule 8(a), a complaint suffices if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests") (internal quotation marks omitted); *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. Ct. App. 2004) ("Texas follows a 'fair notice' pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial."). Plaintiffs' state court

complaint alleged that the Cabo franchise was "engaged in a joint enterprise with defendants" and referred to all defendants as "Coldwell Banker." Plaintiffs argue that together, these factors were sufficient to put defendants on notice of the nature and basic issues of their claims, including that they sought to impose liability under the single business enterprise doctrine.

Joint enterprise and single business enterprise are distinct theories of liability. *N. Am. Van Lines*, 50 S.W.3d at 116, 120 (stating that, while the theories share some elements, single business enterprise does not require an equal right to direct and control). However, at least one Texas Court of Appeals has held that allegations of joint enterprise and alter ego sufficed to also claim single business enterprise liability. *Rio Grande Valley Gas Co. v. City of Edinburg*, 59 S.W.3d 199, 208-10 (Tex. Ct. App. 2000), *rev'd on other grounds*, *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74 (Tex. 2003). The court in *Rio Grande* concluded that the allegations of joint enterprise and alter ego, along with the facts alleged in support thereof, gave defendants fair notice of the plaintiff's claim of single business enterprise, relying on Texas's liberal pleading standards. *Id*.

In addition, a Texas Court of Appeals has held that, where the plaintiff referred to two corporate defendants by a single name in his complaint but did not include an allegation of single business enterprise, defendants were not prejudiced

9

when the trial court later allowed the plaintiff to amend the complaint to allege single business enterprise. *Beneficial Pers. Servs. v. Rey,* 927 S.W.2d 157, 164-65 (Tex. Ct. App. 1996). According to the court, by referring to defendants by a single name, plaintiffs had provided sufficient notice to defendants that they sought to hold both liable through theories of corporate liability. *Id. Beneficial* thus suggests that, by referring to defendants by a single name in the complaint, a plaintiff adequately pleads single business enterprise, because the pleading puts defendants on notice of plaintiff's intention to pursue any available theory of corporate liability. *See Penley*, 146 S.W.3d at 232 (noting that a pleading is adequate in Texas if defendants can ascertain from it the basic issues of the controversy).

While not a model of clarity, we find that, given liberal pleading standards and resolving all ambiguities in Texas law in plaintiffs' favor, defendants could ascertain from plaintiffs' allegation of joint enterprise and reference to all defendants by a single name that plaintiffs intended to pursue available theories of corporate liability, including single business enterprise. We turn now to whether defendants have established that there is no reasonable basis on which the court can predict plaintiffs' possible recovery against CBMI and Smith under that theory.

In determining whether two corporations are operated as a single business enterprise, courts consider a list of non-exhaustive factors, including: (1) common

10

employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to the other's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of the other; (7) undocumented transfers of funds between corporations; (8) unclear allocations of profits and losses between corporations; and (9) common ownership. *Bridgestone Corp. v. Lopez*, 131 S.W.3d 670, 681-82 (Tex. Ct. App. 2004); *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536-37 (Tex. Ct. App. 1986). Evidence of less than all of these factors can sustain a finding of single business enterprise. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 745-47 (Tex. Ct. App. 2004) (upholding jury finding of single business enterprise where evidence established several, but not all, factors).

Plaintiffs came forward with evidence in the district court satisfying several of the single business enterprise factors. It is undisputed that Smith owns 100% of CBMI and 1% of CBAM, and that CBMI owns the remaining 99% of CBAM. It is also undisputed that Smith served as president of both CBMI and CBAM. The names of both CBMI and CBAM included "Coldwell Banker,"[3] and plaintiffs' evidence showed that CBMI also listed "Coldwell Banker Affiliates de Mexico"

---

[3] *See Bridgestone Corp. v. Lopez*, 131 S.W.3d 670, 686 (Tex. Ct. App. 2004) (finding that Bridgestone/Firestone, Inc. and Bridgestone Corp. shared a common business name because both names contained "Bridgestone").

11

(CBAM) as an assumed name in a filing with the Texas Secretary of State.  Michael Bohannon testified by affidavit that, as an employee of Richard Smith Company, he was leased to CBMI but also worked for CBAM on the sale of the Cabo franchise to Jacobsen.  Several items of evidence showed that CBMI, CBAM, and Richard Smith shared a common office in Bryan, Texas.  Phillip Hendrix, who worked as CBAM's general director, testified in a deposition that Smith transferred funds to CBAM "a few times a year."

Instead of disputing plaintiffs' evidence, defendants argue that the single business enterprise theory is not available to plaintiffs based on the Texas Supreme Court's decision in *Southern Union Co. v. City of Edinburgh*, 129 S.W.3d 74 (Tex. 2003).  In that case, the court declined to rule on the viability of the single business enterprise theory.  *Id*. at 86-87.  It held, however, that the theory could not be used to impute the contracts of one corporation to an affiliated corporation due to Texas Business Corporation Act article 2.21, because article 2.21 requires a showing of actual fraud and the single business enterprise theory does not.[4]  *Id*. at 86-89.

---

[4] Article 2.21 provides:

> A.  A holder of shares, an owner of any beneficial interest in shares, . . . or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to:

> . . .

*Southern Union* is distinguishable from the present case, however, because the obligation that plaintiffs seek to recover on is based on CBAM's alleged negligence, rather than on a contract. Article 2.21 speaks only to a "contractual obligation of the corporation or any matter relating to or arising from the obligation." TEX. BUS. CORP. ACT art. 2.21 (Vernon 2003); *see Nordar Holdings, Inc. v. W. Sec. (USA) Ltd.*, 969 F. Supp. 420, 422 and 423 n.2 (N.D. Tex. 1997) (noting that article 2.21 applies to contract cases).

Defendants also suggested at oral argument that Smith, as CBMI and CBAM's president, cannot be in a single business enterprise with those corporations as a matter of law and that there is no evidence of inequitable conduct that would support veil-piercing. Although these arguments are belatedly raised, we address them for the sake of clarity. *See Najarro v. First Fed. Sav. & Loan Ass'n of Nacogdoches*, 918 F.2d 513, 516 (5th Cir. 1990) ("In the absence of manifest

---

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, owner, . . . or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, . . . or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, . . . or affiliate[.]

TEX. BUS. CORP. ACT art. 2.21 (Vernon 2003).

13

injustice, this court will not consider arguments belatedly raised after appellees have filed their brief.").

We find no support for defendants' contention that Smith cannot be in a single business enterprise with CBMI and CBAM. In fact, a Texas Court of Appeals has upheld a jury's finding that a corporation and its chairman operated as a single business enterprise. *Hall v. Timmons*, 987 S.W.2d 248, 252 (Tex. Ct. App. 1999). This argument thus fails to establish that there is no reasonable basis for predicting that plaintiffs could prevail in imposing liability on Smith under the single enterprise theory.

It is unclear what degree of inequitable conduct defendants believe is necessary to justify imposing liability on CBMI and Smith under the single business enterprise theory. Generally, Texas law supports piercing the corporate veil when the corporate form "is used as part of an unfair device to achieve an inequitable result." *Nat'l Plan*, 150 S.W.3d at 744. For example, under the alter ego theory, a plaintiff must show that the corporation is "merely a tool or business conduit of another corporation. At a minimum, the plaintiff must prove that he has fallen victim to a basically unfair device by which [a subsidiary corporation] has been used to achieve an inequitable result." *N. Am. Van Lines*, 50 S.W.3d at 119 (internal citations and quotation marks omitted).

However, a plaintiff need not show fraud to recover under the single business enterprise theory. *Id*. Single business enterprise liability is based instead on "equity analogies to partnership principles of liability[,]" holding one corporation liable for the debts of another when the two have integrated resources and operations to achieve a common purpose. *Id*. Texas courts have upheld imposition of liability under the theory based on plaintiffs' proof of factors showing integrated resources and common purpose, without requiring further proof of inequitable conduct. *See, e.g., Nat'l Plan*,150 S.W.3d at 744-47; *N. Am. Van Lines*, 50 S.W.3d at 120-21; *Paramount Petroleum*, 712 S.W.2d at 536. Resolving any ambiguity in the law in plaintiffs' favor, we conclude that plaintiffs' proof of several single business enterprise factors is sufficient to establish a reasonable basis for recovery against CBMI and Smith under that theory.

Our conclusion that plaintiffs' claim that CBMI and Smith were engaged in a single business enterprise with CBAM survives an improper joinder Rule 12(b)(6)-type analysis does not end our inquiry, however. There is no reasonable basis to conclude that they may recover from those defendants on that theory unless CBAM is itself liable. Thus, we must determine whether their claims against CBAM can survive a 12(b)(6)-type challenge.[5]

---

[5] Defendants argue that plaintiffs contend only that CBAM is vicariously liable for the acts of the Cabo franchise under Texas agency law principles and that they cannot

15

Plaintiffs' complaint alleges, among other things, negligence on the part of all defendants, including CBAM. "The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). In Texas, where a party has a right to control the activities of another (created either contractually or through actual exercise of control), that party has a concomitant duty to exercise that control reasonably. *Read v. The Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex. 1998); *see also Fitz v. Days Inns Worldwide Inc.*, 147 S.W.3d 467, 471 (Tex. Ct. App. 2004); *Barnes v. Wendy's Int'l, Inc.*, 857 S.W.2d 728, 729-30 (Tex. Ct. App. 1993). Here, plaintiffs' complaint alleged that all defendants, including CBAM, "ha[d] the obligation to exercise control over [the Cabo franchise,]" that "[d]espite . . . warnings, [defendants] did little to protect the funds of its clients[,]" and that "[defendants'] acts and omissions caused the loss of plaintiffs' monies."

Plaintiffs came forward with evidence supporting their claim that CBAM had a right of control over Mañana Today's escrow services. The franchise agreement,

show the requisite agency relationship. This argument is meritless. Plaintiffs' complaint clearly argues direct liability on the part all defendants. Plaintiffs' Original Petition at ¶¶ 11, 12 (stating that "plaintiffs make claims against all defendants under [various state law] causes of action" and that defendants "are liable . . . for their own acts and omissions").

while generally exempting escrow services from its terms, required Mañana Today to keep records of those services and gave CBAM the right to inspect them and terminate the franchise for good cause. Defendants argue that CBAM had no right of control over Mañana Today's escrow activities, because those activities were outside the scope of the franchise agreement. However, plaintiffs also came forward with evidence that CBAM actually exercised control over the escrow services. Michael Schiable, a member of Cabo San Lucas's real estate professional community, testified by affidavit that Phillip Hendrix informed him in November 2001 that "Coldwell Banker" (presumably CBAM, Hendrix's employer) had required Jacobsen to sign an agreement to use only third party escrow services after learning of her misappropriations over one year earlier.

Plaintiffs also submitted evidence of customer complaints directed to CBAM supporting its claim that CBAM was aware of LuLu Jacobsen's misappropriations for over a year before it terminated her franchise in December 2001. Construing this unchallenged evidence and any ambiguities in Texas law in plaintiffs' favor, we conclude that a right of control arguably arose from the franchise agreement, CBAM's exercise of control, or a combination of the two, and CBAM's knowledge and failure to timely act on that knowledge arguably breached that duty. Consequently, defendants have not established that there is no reasonable basis for

the court to predict that plaintiffs may prevail against CBAM on their negligence theory, and thus against CBMI and Smith as part of a single business enterprise with CBAM.

## III. Conclusion

Our *de novo* review of the record reveals that defendants have failed to carry their "heavy burden" of establishing the improper joinder of CBMI and Richard Smith. The district court therefore lacked subject matter jurisdiction, and its dismissal of CBAM for want of personal jurisdiction and failure to state a claim are void. We vacate the order of dismissal and remand with instructions that the case be remanded to state court.

VACATED and REMANDED with instructions.