# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 17, 2013

No. 12-30966

Lyle W. Cayce
Clerk

RUSS M. HERMAN; ARNOLD LEVIN,

Plaintiffs - Appellants

v.

CATAPHORA, INCORPORATED; ROGER CHADDERDON,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Russ M. Herman and Arnold Levin appeal the district court's final order granting the Defendants' motion to dismiss for lack of personal jurisdiction and purporting to transfer the action to the Northern District of California. Herman and Levin claim Roger Chadderdon made defamatory statements that were aimed at, and caused harm in, Louisiana, thereby grounding personal jurisdiction in that state. We agree with the district court that personal jurisdiction did not exist in Louisiana but find error in the dismissal. We VACATE the dismissal and REMAND for the case to be transferred to California.

No. 12-30966

FACTS AND PROCEDURAL HISTORY

Herman and Levin are members of the Plaintiffs' Steering Committee for the Chinese Drywall multidistrict litigation ("MDL") in the Eastern District of Louisiana. Herman, the Steering Committee's court-appointed Liaison Counsel, resides and works in Louisiana. Levin, the Steering Committee's Lead Counsel, resides in Pennsylvania but works extensively in Louisiana. Roger Chadderdon is technology counsel for Cataphora, a Delaware corporation with its principal place of business in California. The company provides litigation support services. The relevant facts underlying this matter are largely undisputed.

After a period of negotiation, Cataphora and the Steering Committee entered into a contract in October 2009 for Cataphora to provide litigation services in the MDL. Soon thereafter, the Steering Committee terminated the contract and claimed Cataphora had surreptitiously included a provision calling for the company to receive a "success fee."

Cataphora filed a breach of contract suit against the Steering Committee in the Northern District of California. In September 2011, Cataphora obtained a judgment against the Steering Committee. In January 2012, the court awarded additional litigation costs and interest. The Steering Committee has appealed both rulings to the Ninth Circuit.

Shortly after judgment was entered in the contract suit, Chadderdon was interviewed by Christopher Danzig for the website Above the Law. Both Danzig and Cataphora were in California when the interview took place. On September 26, 2011, Danzig posted an article about the contract dispute on Above the Law. It quoted several comments Chadderdon made to Danzig, including this about the defendants in the contract dispute:

> These guys are the worst of hypocrites you can possibly find. They claim to be trying to help the little guy, but what they're doing is trying to put more money in their own pockets. Everybody knows

2

that, but this is a case that illustrates it beyond what I have ever seen.

The article described the nature and status of the Chinese Drywall MDL, as well as the contract negotiations between Cataphora and the Steering Committee.  After Danzig explained the collapse of the parties' contractual relationship, Chadderdon was quoted: "We got screwed.  Their strategy from day one was to drag this out as long as possible to make it go away."  Danzig also stated that Chadderdon said the Steering Committee told Cataphora to "[s]ue us if you dare." When describing the Steering Committee's defense theory that Cataphora had surreptitiously included the success fee in the contract without alerting the Steering Committee, Chadderdon is quoted as saying "[t]he jury saw through it almost immediately.  They were bored to tears with this."  Finally, before ending the article with a full list of defendants in the contract dispute (including Herman and Levin, though with Levin's name misspelled), Danzig quotes Chadderdon saying "[w]e kicked their ass."

In February 2012, Herman and Levin filed this action against Cataphora and Chadderdon ("Defendants") in the Eastern District of Louisiana, claiming defamation and interference with prospective advantage.  In June 2012, prior to discovery, the Defendants filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and for improper venue pursuant to Rule 12(b)(3).  In the alternative, the motion requested that the action be transferred to the Northern District of California.

Accepting the Defendants' arguments with regard to its lack of personal jurisdiction, the district court on September 19, 2012, granted the Defendants' motion to dismiss.  In the next sentence of the order, the court transferred the case to the Northern District of California.  Herman and Levin appealed that order to the Fifth Circuit.  They also filed a motion in the California court, which was granted, to transfer the case back to the Eastern District of Louisiana.

No. 12-30966

DISCUSSION

*1. Appellate jurisdiction*

First, we must determine whether we have jurisdiction. If the Louisiana district court's order transferring the case to the Northern District of California was effective, then jurisdiction was in the California court at least until the retransfer to Louisiana; whether the appeal, which predated the retransfer, is precisely in order would be a question. On the other hand, if the court's dismissal of the action was effective, then the dismissal is an appealable final order and we have jurisdiction. *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 849 n.4 (5th Cir. 1990).

In its final order, the district court provided a detailed explanation of its reasons for concluding it lacked personal jurisdiction over the Defendants. At the end of this analysis, the court stated "it is appropriate to decide whether this matter should be dismissed or transferred." It then analyzed this question based on 28 U.S.C. § 1406(a), under which a district court "in which is filed a case laying venue in the wrong division or district" must transfer a case "if it be in the interest of justice." Concluding that standard was met, the court decided transfer was appropriate. But rather than order the case transferred pursuant to the alternative request in the Defendants' motion, the court granted the Defendants' motion to *dismiss*, and then "further ordered that this matter is transferred to the [United States] District Court for the Northern District of California."

The district court recognized it was faced with a choice whether to dismiss or transfer. *See* 28 U.S.C. § 1406(a) ("The district court . . . shall dismiss, *or* if it be in the interest of justice, transfer . . . .") (emphasis added). In its order, though, the court did both. We conclude that only one of the orders can be effective. A court's dismissal of an action results in an appealable final order, making a transfer invalid because the court no longer has authority over the

4

matter.[1] Because here the court clearly agreed with the analysis on the personal jurisdiction issue in the Defendants' motion to dismiss, and because its first order was to grant that motion, we conclude the court validly dismissed the action. This resulted in an appealable final order, making the transfer invalid. We have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

*2. Personal jurisdiction in Louisiana*

A district court's dismissal of a suit for lack of personal jurisdiction where the facts are not disputed is a question of law, which is reviewed *de novo*. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). The party invoking the court's jurisdiction bears the burden of establishing that a defendant has the requisite minimum contacts with the forum state to justify the court's jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). Where, as here, the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that the nonmovant make a *prima facie* showing. *Id.*

"The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citations omitted). For a federal court to exercise personal jurisdiction over nonresident defendants, it must first determine the defendants have "purposefully established 'minimum contacts' with the forum state and, if so, that entertainment of the suit against

---

[1] This appears to be a question of first impression in this court. At least three of our sister circuits have considered similar issues, and two have determined, as we do here, that the dismissal must be given effect as a final order and the transfer declared invalid. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 172-73 (D.C. Cir. 2006); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999); *but see Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 44-45 (1st Cir. 2006).

the nonresident[s] would not offend 'traditional notions of fair play and substantial justice.'" *E.g.*, *Bullion*, 895 F.2d at 216 (citations omitted). Such minimum contacts may support either "general" or "specific" personal jurisdiction. *Id.* General jurisdiction is appropriate only where a defendant maintains "continuous and systematic" contacts with the forum state. *Id.* Herman and Levin do not contend the Defendants have such contacts.

Therefore, only specific jurisdiction is at issue. Specific jurisdiction "may arise incident to the commission of a single act directed at the forum," and is appropriate only where the defendant "purposefully availed [himself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws." *Id.* (citations omitted). Even in such a case, the litigation must "result[] from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks and citation omitted); *see also Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010) ("Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action.").

The activities from which Herman's and Levin's cause of action arise are the statements ostensibly made by Chadderdon to Danzig, which were then published on the Above the Law website. "Therefore, the issue narrows to whether these [allegedly] defamatory remarks constituted purposeful availment such that [Chadderdon] could have reasonably anticipated being haled into a [Louisiana] court as a result of his statements." *Clemens*, 615 F.3d at 379.

In the context of defamation actions, personal-jurisdiction law is explained in the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). Actress Shirley Jones sued the *National Enquirer* newspaper in California, claiming she had been libeled by an article in that publication. *Id.* at 784. The newspaper was a Florida corporation with its principal place of business in Florida; California was its largest market. *Id.* at 785. Jones was a resident of California

whose professional life was also based in that state. *Id.* The Court noted that the article's writer made several telephone calls to California sources to obtain the information contained in the article. *Id.* at 785-86. The Court concluded that jurisdiction was proper in California because the story, "drawn from California sources," centered around "the California activities of a California resident" whose career was based in California; therefore, "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788-89. Because California was the "focal point" of both the article itself and the harm suffered, even though the actual conduct of writing and researching the article took place in Florida, jurisdiction rested with the California court. *Id.* at 789.

In applying the *Calder* analysis, we have emphasized the importance of the "focal point" language. *Clemens*, 615 F.3d at 379. A plaintiff's suffering damage in the forum state is part of the calculus, but for minimum contacts to be present the allegedly defamatory statements must be adequately directed at the forum state. *Id.* (citing *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)). Even if the majority of the claimed harm is felt in the forum state, this court has declined to find personal jurisdiction when the statements focus on activities and events outside the forum state. *Id.* at 379-80 (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424-26 (5th Cir. 2005)). In *Clemens*, which concerned public statements made about a professional baseball player by his former athletic trainer, we concluded jurisdiction was not appropriate in Texas because the plaintiff failed to make a "prima facie showing that [the defendant] made statements in which Texas was the focal point: the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state." *Clemens*, 615 F.3d at 380.

Unlike in *Clemens*, here it is not immediately clear who the targets of the statements were and where the conduct Chadderdon described took place.

Herman and Levin contend that, in the context of the article, Chadderdon's reference to "these guys" must refer to the members of the Steering Committee. Supporting that argument, Herman and Levin were among the defendants in the contract lawsuit and were members of the Steering Committee. Further, Herman and Levin argue that Chadderdon knew the Steering Committee's business was mostly in Louisiana, which shows he intended the harm of his statements to be felt there. The evidence somewhat in support for that argument is that Chadderdon and others at Cataphora were aware that the Chinese Drywall MDL was based in Louisiana.

Even so, the fact that Chadderdon knew Herman and Levin engaged in some activity in Louisiana is not sufficient to prove the allegedly defamatory statements themselves were made in reference to that activity. Although Danzig described the nature of the Chinese Drywall MDL for context in the article, the focal point of Chadderdon's own quoted statements are on the contract dispute. He never mentioned Louisiana explicitly or implicitly. He did not refer to specific actions taken in Louisiana. Instead, he discussed his perceptions of the Steering Committee members' behavior surrounding the contract dispute, which was litigated in California. He was in California when he made the statements to a writer who also was in California.

Of course, Cataphora did contract to provide litigation services for the MDL in Louisiana. But the connection between that contract and Chadderdon's allegedly defamatory statements is too attenuated to support bringing him into Louisiana court for defamation. Finally, like the statements in *Clemens* and unlike the article in *Calder*, there is no evidence that Chadderdon's statements or Danzig's article were directed at Louisiana residents, or that Above the Law has a disproportionately high Louisiana readership.

Perhaps Herman and Levin did make a *prima facie* showing that the harm imposed by Chadderdon's allegedly defamatory statements will be felt largely in

Louisiana. This is not enough. Without a showing that the statements' focal point was Louisiana, which Herman and Levin have failed to make, the district court lacked personal jurisdiction over the Defendants. *See Clemens*, 615 F.3d at 379-80.

*3. Whether dismissal or transfer is the appropriate disposition*

Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, a federal court is authorized under 28 U.S.C. § 1406(a) to transfer the action to "any district or division in which it could have been brought" if the court finds that it is "in the interest of justice" to transfer the action. *See Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967). Section 1406(a) allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits. *Id.* The statute specifically refers to "laying venue in the wrong division or district," but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985). We explained that a division or district may be "wrong" under Section 1406(a) when the original court lacks personal jurisdiction. *Id.* Therefore, upon finding that it lacked personal jurisdiction, the district court correctly cited Section 1406(a) for the authority to transfer the case if that was appropriate in the interest of justice. *Id.* at 1027.

The district court's order stated it would be in the interest of justice to transfer this case to the Northern District of California because witnesses, evidence, the underlying events, and both defendants are based there. Another reason a transfer here is in the interest of justice is to avoid any potential statute of limitations issues in California.

The district court's dismissal is VACATED. This matter is REMANDED to the district court with instructions to transfer it to the United States District Court for the Northern District of California.