# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2015

Lyle W. Cayce
Clerk

No. 14-20552

INTERNATIONAL ENERGY VENTURES MANAGEMENT, L.L.C.,

  Plaintiff - Appellant

v.

UNITED ENERGY GROUP, LIMITED; SEAN MUELLER,

  Defendants - Appellees

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Plaintiff International Energy Ventures Management, L.L.C. ("IEVM") appeals the district court's dismissal of its action against Defendants United Energy Group, Limited ("UEG") and Sean Mueller ("Mueller") for failure to state a claim against Mueller and for lack of personal jurisdiction over UEG. For the reasons stated herein, we affirm the district court's dismissal of the action against Mueller. However, we conclude that personal jurisdiction over UEG comports with due process, and therefore, we reverse the district court's dismissal of UEG.

No. 14-20552

## I.  FACTUAL BACKGROUND

IEVM filed the instant action against UEG and Mueller in Texas state court.  UEG removed the action to federal court, and the original state court petition was never amended.  The facts, recited almost verbatim from the complaint, are as follows.

In July 2010, British Petroleum ("BP") announced that it wished to sell its Pakistani subsidiaries that owned oil and gas fields in Pakistan ("BP Pakistan Assets").  IEVM had intimate knowledge and expertise regarding BP's assets in Pakistan.  A principal of IEVM, Dan Hughes, mentioned the BP Pakistan Assets sale to Mueller, a broker/investment banker he knew from previous consulting work.  Two days later, Mueller contacted BP stating that he had been retained by IEVM and that IEVM wanted to be on the bidding list.  Mueller put IEVM's PowerPoint presentation regarding the BP Pakistan Assets on his letterhead to send to potential investors, stating that he had been retained by IEVM.

Mueller's Chinese associate translated IEVM's PowerPoint presentation into Chinese and presented it to UEG, a Chinese oil and gas company, in Beijing.  UEG was interested in the BP Pakistan Assets.  On September 8, 2010, the Chairman of UEG, Hongwei Zhang, sent a letter of interest, drafted by Mueller, to BP, which mentioned IEVM as the expert on BP's Pakistani fields who introduced UEG to the project.  Mueller then sent IEVM a proposed compensation structure prepared by attorneys at Dewey & LeBoeuf, UEG's attorneys for the BP transaction.  Under the compensation agreement ultimately agreed to, IEVM was to assist UEG in its technical evaluation and in sourcing financing and act as consultants on behalf of UEG for the acquisition of the BP Pakistan Assets.  IEVM was to be paid for its out of pocket expenses and in addition, consulting fees of $750,000 per year.  Subsequently UEG agreed, in consideration of work done by IEVM but not covered by the

2

existing compensation agreement, to pay IEVM and Mueller 6 percent of the acquisition price of assets. Further, the individual members of IEVM were to be given employment contracts on par with others in the industry for post-acquisition work.

In November 2010, IEVM learned from Mueller that BP had accepted UEG's offer to purchase its Pakistan Assets for $775 million. In January 2011, the chair of UEG confirmed its agreement with IEVM. Throughout the remainder of 2010 and through September 2011, IEVM performed its obligations to UEG under the agreement. On September 16, 2011, the deal between BP and UEG to purchase BP's Pakistan Assets closed. Throughout the remainder of 2011, IEVM attempted to get a resolution of payments due from UEG. In March 2012, UEG requested that IEVM, experts in the Pakistan fields, provide further assistance on the reserves. IEVM refused to perform any additional work for UEG unless UEG acknowledged that IEVM has not been paid for work as agreed and indemnified IEVM for past work done on the project.

The executive director of UEG signed an agreement which acknowledged that IEVM is owed for past due services and that IEVM was to be paid following closing of the purchase of the properties from BP. UEG subsequently paid IEVM for the additional work performed from March 2012 forward, and has likewise paid IEVM's expenses but has never paid the past due fees, including 6 percent of the acquisition price.

Based on the foregoing, IEVM alleged causes of action for breach of contract, promissory estoppel, and quantum meruit. IEVM also brought a claim for fraud "because Defendants never intended to pay IEVM its consulting fees or its finder's fee equity, and thereby deceived IEVM into working on the BP Pakistan project without compensation."

No. 14-20552

## II. PROCEDURAL HISTORY

On September 25, 2013, following the removal of this case to federal court, Mueller moved to dismiss the action, as it pertained to him, for failure to state a claim. On the same day, UEG moved to dismiss for lack of personal jurisdiction. On October 9, 2013, IEVM moved to remand the action to state court. On October 10, 2013, IEVM requested leave to amend the complaint, but did not attach a proposed amended complaint.

On November 4, 2013, the district court denied IEVM's motion to remand in a one-page order that offered no explanation. On November 8, 2013, IEVM moved to compel arbitration and stay the proceedings. Although the district court initially granted IEVM's motion to compel arbitration in a one-page order, upon reconsideration, the district court vacated that order on January 2, 2014. On July 25, 2014, following full briefing by the parties, the district court dismissed the action entirely for insufficient service of process on UEG, lack of personal jurisdiction over UEG, and failure to state a claim against Mueller. In its dismissal order, the district court stated, "The plaintiff has 60 days to seek and effect proper service of process on UEG, otherwise this Order of Dismissal becomes final." *Int'l Energy Ventures Mgmt. LLC v. United Energy Grp., LTD.*, No. 4:13-cv-2754, 2014 WL 3732821, at *3 (S.D. Tex. July 25, 2014). IEVM filed its notice of appeal on August 25, 2014. On September 19, 2014, IEVM filed a certificate of service in the district court. On September 22, 2014, IEVM moved to supplement the record on appeal, and that motion was granted.

On appeal, IEVM challenges the district court's decision not to remand the case to state court, the holding that IEVM has failed to state a claim against Mueller, and the holding that the district court lacked personal jurisdiction over UEG. We address each of these issues in turn.

4

## III.  DENIAL OF REMAND TO STATE COURT

The district court found that the joinder of Mueller to this lawsuit was improper and done solely for the purpose of defeating jurisdiction.  *Int'l Energy Ventures*, 2014 WL 3732821, at \*2.  The district court stated that "[t]here are no facts pled that tie Mueller to the dispute that [IEVM] asserts against UEG save his role with or in behalf of IEVM."  *Id.*  For those reasons, the district court denied IEVM's motion for a remand to state court.  We review the denial of a motion to remand de novo.  *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014).

Under the federal removal statute, a civil action may be removed from state court to federal court on the basis of diversity because the federal court has original subject matter jurisdiction over such cases.  *See* 28 U.S.C. § 1441(a).  The only caveat is that in cases where the parties are diverse but a properly joined defendant is a citizen of the state in which the action is brought, removal is improper.  *See id.* § 1441(b)(2).  In the instant action, the defendants removed the action to federal court on the basis that there was complete diversity of the parties because Mueller, a Texas resident, was improperly joined, UEG is a Bermuda limited liability company with a principal place of business in Hong Kong, and IEVM is a citizen of Texas.

There are "two ways to establish improper joinder:  (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (internal quotation marks and citation omitted).  At issue in the instant action is the latter question:  whether IEVM has established a cause of action against Mueller in state court.

The defendants, as the removing parties, have the burden of proving that IEVM has not established a state court cause of action against Mueller.  *Gasch*

*v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). UEG and Mueller must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. UEG and Mueller must prove their claim of fraudulent joinder by clear and convincing evidence. *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990). With respect to this burden, the parties dispute whether, in determining if IEVM might recover against Mueller, the court should analyze claims under the Texas fair notice pleading standard or under the Federal Rules of Civil Procedure ("FRCP"). We hold, in accordance with at least three unpublished decisions of our court, that the Texas pleading standard applies. *See Michels v. Safeco Ins. Co. of Ind.*, 544 F. App'x 535, 538 (5th Cir. 2013) (unpublished) (per curiam) ("As the [plaintiffs] concede, the district court correctly stated that it first had to examine whether the [plaintiffs] sufficiently pleaded a cause of action under the Texas fair notice pleading standard."); *Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 344–45 (5th Cir. 2013) (unpublished) (per curiam) (applying the Texas fair notice pleading standard); *De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537–38 (5th Cir. 2005) (unpublished) (same); *see also Holmes v. Acceptance Cas. Ins. Co.*, 942 F. Supp. 2d 637, 645 (E.D. Tex. 2013) (observing that the majority of Texas district courts apply the Texas pleading standards).

Under the Texas fair notice pleading standard, the pleading need only allow "an opposing attorney of reasonable competence . . . [to] ascertain the nature and basic issues of controversy and testimony probably relevant." *Hayden v. Allstate Tex. Lloyds*, No. H-10-646, 2011 WL 240388, at *7 (S.D. Tex. Jan. 20, 2011) (internal quotation marks and citations omitted). IEVM contends that it has stated four Texas state law causes of action against

Mueller:  breach of contract, promissory estoppel, quantum meruit, and fraud. However, IEVM never alleges that Mueller contracted with it to provide consulting services.  Instead, IEVM merely states that Mueller held himself out to be retained by IEVM.  Moreover, the complaint does not allege that Mueller created a compensation structure by which IEVM would be paid or that Mueller promised to pay IEVM.  The complaint asserts that Mueller simply sent a proposed structure prepared by UEG's attorneys to IEVM.  The complaint then goes on to allege that IEVM made efforts to obtain payment for its past due services from UEG, but makes no mention of Mueller.  Given the allegations in the complaint, we conclude that IEVM has not provided fair notice as to the basic issues of its alleged controversies.

Specifically, a claim under Texas law for breach of contract is not stated because IEVM never alleges the existence of a contract between it and Mueller. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) ("The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.").  A claim against Mueller for promissory estoppel has not been stated because IEVM has not alleged that Mueller promised it anything, but instead alleged that Mueller relayed a promise to IEVM on behalf of UEG.  *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) ("The requisites of promissory estoppel are:  (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.").  A claim against Muller for quantum meruit has not been stated because the complaint does not assert that IEVM provided any valuable services to Mueller.  *See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("To recover under the doctrine of quantum meruit, a plaintiff must establish that:  1) valuable services and/or

materials were furnished; 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.").

Lastly, an opposing attorney of reasonable competence would be unable to determine, based on the pleadings, the nature of IEVM's claim of fraud against Mueller. *See Hayden*, 2011 WL 240388, at *7. The complaint states in conclusory fashion that "based on the foregoing IEVM alleges a cause of action for fraud because Defendants never intended to pay IEVM its consulting fees or its finder[']s fee equity, and thereby deceived IEVM into working on the BP Pakistan project without compensation." The complaint then goes on to allege that IEVM made efforts to obtain payment for its past due services from UEG, but makes no mention of Mueller. While such an attorney could guess at the nature of IEVM's fraud claim, a firm determination cannot be made as to the misrepresentation that IEVM is alleging was made by Mueller. Presumably, IEVM is stating that Mueller knew UEG had no intention of paying IEVM but still passed along the compensation structure plan from UEG to IEVM anyway. But, that allegation was not pleaded sufficiently to survive dismissal, even under Texas pleading standards.

Accordingly, we affirm the district court's denial of remand because IEVM has not stated any claim against Mueller under the Texas notice pleading standards.

## IV. FAILURE TO STATE A CLAIM AGAINST MUELLER

We further conclude that the district court properly dismissed this action against Mueller under FRCP 12(b)(6). For the same reasons IEVM did not state claims under the Texas notice pleading standard, IEVM has not stated claims under the more stringent federal requirements. *See Culbertson v. Lykos*, Nos. 13-20569, 13-20751, 2015 WL 3875815, at *3 (5th Cir. June 22,

2015) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted)); FRCP 9(b).[1]

## V. PERSONAL JURISDICTION OVER UEG

IEVM brought the instant action to recover payment allegedly owed based on an unwritten agreement that UEG would pay IEVM for its pre–March 2012 consulting services on the BP deal. However, from March 2012 onward, IEVM performed services for UEG under an agreement titled "Indemnity and Release Agreement" ("IRA"). IEVM refers to this agreement as a supplemental agreement, i.e., a supplement to the original, unwritten agreement. In the IRA, UEG acknowledges IEVM's previous consultation on the BP deal and that UEG did not pay IEVM for those past consulting services. The IRA indicates that, since the closing of the BP transaction, "UEG has reason to believe the reserves associated with such properties are significantly less than what it had believed them to be[.]" In consideration for further IEVM consulting, UEG agreed to pay IEVM fees as outlined elsewhere in the IRA for future services and to release and indemnify IEVM from any claim arising out of the BP deal.

The IRA provided that the agreement would be governed by Texas law. Moreover, the agreement provided that any controversies would be settled by arbitration in Houston, Texas. Lastly, the IRA provided that it constituted the entirety of the parties' agreement with the exception that it "does not supersede, but is a supplement to, the agreement with respect to the prior work completed by [IEVM] for UEG."

---

[1] IEVM appeals the district court's denial of leave to amend its complaint. However, IEVM did not attach a proposed amended complaint to its motion to amend nor explain what the amendment would be. In the absence of any showing that an amendment would cure defects in its pleadings against Mueller, we conclude that the court was within its discretion to deny leave to amend. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003).

No. 14-20552

IEVM asserts that personal jurisdiction over UEG is proper for two distinct reasons.  First, IEVM contends that the IRA, as a supplemental agreement, extends to the original, unwritten agreement, and therefore, its arbitration provision signifies implied consent to jurisdiction in Texas for any cause of action related to the original, unwritten agreement.  Second, IEVM asserts that UEG has sufficient contacts with the forum and that personal jurisdiction over UEG would comport with traditional notions of fair play and substantial justice.  The district court only addressed the first of IEVM's arguments and apparently found that the IRA was not a supplement to the original agreement so as to render the arbitration clause inapplicable to the original, unwritten agreement.  *See Int'l Energy Ventures*, 2014 WL 3732821, at *3 ("While the agreement acknowledged that past services had been provided by IEVM, for which IEVM had not been paid, it does not establish Texas as the forum for litigating claims for past services.  This is so because, although UEG acknowledged by agreement a past debt due IEVM, it does not promise to pay the debt.  There is no agreement to pay, therefore, reference in the agreement to Texas law as the governing law, arbitration and a Texas forum, do not apply to past services.").

"A district court's dismissal of a suit for lack of personal jurisdiction where the facts are not disputed is a question of law, which is reviewed *de novo*."  *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).  The plaintiff has the burden of establishing that the court has personal jurisdiction.  *Id.*[2]  Whereas here, the district court held no evidentiary hearing regarding this issue, "that burden requires only that the [plaintiff] make a *prima facie*

---

[2] The plaintiff has the burden of demonstrating specific jurisdiction for each claim asserted against the nonresident defendant.  *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014) (unpublished) (per curiam).  Because IEVM bases all of its claims on identical factual allegations, we perform a singular, joint analysis.

10

showing." *Id.* "We must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)) (internal quotation marks omitted). We address first the ground for personal jurisdiction that the district court rejected: whether the arbitration clause of the IRA applies to the parties' original unwritten agreement and if so, whether it confers personal jurisdiction.

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). "A contract is unambiguous if it can be given a definite or certain legal meaning." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We need not decide, however, whether the plain language of the IRA indicates it is a supplement to the original unwritten agreement because we hold that even assuming it does, the arbitration provision does not demonstrate implied consent.

In setting forth its argument to the contrary, IEVM analogizes an arbitration clause to a forum selection clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 & n.14 (1985) (noting that personal jurisdiction may be waived by forum selection clauses that are "freely negotiated" and are not "unreasonable and unjust" (internal quotation marks and citation omitted)). However, UEG responds that an arbitration clause renders jurisdiction to the court for the *limited* purpose of compelling arbitration. We agree. "When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling

11

arbitration." *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007) (unpublished) (per curiam); *see also Encompass Power Servs. v. Eng'g & Constr. Co.*, 224 F. App'x 329, 331 (5th Cir. 2007) (unpublished) (per curiam). Thus, UEG's agreement to arbitrate in Texas does not constitute consent to the personal jurisdiction of Texas courts to adjudicate its claims in the first instance.

Nevertheless, the district court may have possessed personal jurisdiction over UEG by virtue of the ordinary personal jurisdiction analysis. "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the Due Process clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the Texas long-arm statute extends as far as constitutional due process permits, we simply need to determine whether a suit in Texas is consistent with the Due Process Clause of the Fourteenth Amendment. *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

Due process requires that a court exercise personal jurisdiction over a nonresident defendant only where the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The court may assert specific personal jurisdiction[3] over nonresident defendants whose contacts with the forum state are singular or sporadic *if* the cause of action asserted arises out of or is related

---

[3] IEVM does not assert that the court has general personal jurisdiction over UEG; and therefore, we do not perform a general jurisdiction analysis. The court may have general jurisdiction over a nonresident defendant where the defendant's business contacts with the forum state are continuous and systematic. *McFadin*, 587 F.3d at 759.

to those contacts. *McFadin*, 587 F.3d at 759; *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The specific jurisdiction analysis for this circuit has been stated as follows:

> Specific jurisdiction requires a plaintiff to show that: (1) there are sufficient (i.e. not random[,] fortuitous[,] or attenuated) pre-litigation connections between the nonresident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. Once the plaintiff makes that showing, the defendant can then defeat the exercise of specific jurisdiction by showing (4) that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable.

*Pervasive*, 688 F.3d at 221–22 (internal quotation marks and citations omitted).

Beginning with the plaintiff's burden on the first three prongs, we examine the pre-litigation contacts that UEG purposefully established with the state of Texas. UEG sent a letter of interest, negotiated with, and sent a bid to BP's Houston office, the hub of the BP deal, in an attempt to secure the BP Pakistan Assets. UEG retained Mueller, a Texas resident, as one of its two principal contacts on the BP deal. UEG contracted with Texas-based IEVM to perform consulting work on the BP deal and sent payment to IEVM in Texas. UEG contracted with the Houston offices of Dewey & LeBoeuf (attorneys), Degolyer & McNaughton (consultants), and Ernst & Young (accountants) to advise it on the BP deal. UEG's Chief Financial Officer travelled to Houston to sign the deal and to attend a dinner celebration.

On this bare record, lacking factual development from a hearing, the question of whether these contacts meet the plaintiff's prima facie burden of showing specific personal jurisdiction is a close call. However, the record sufficiently establishes that given the nature of the relationship between IEVM

and UEG, as well as their joint connection to the BP deal, it was foreseeable by UEG that the hub of IEVM's consulting activity would be in Texas. *See Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1010 (5th Cir. 1982). In other words, the performance of IEVM's consulting work in Texas was not fortuitous but was purposeful given that Texas was the hub of the BP deal. *See id.* at 1007 ("The rule developed by this circuit . . . is that when a nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant, in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes." (internal quotation marks and citation omitted)). And because the unifying theme for all of IEVM's causes of action is the allegation that UEG never paid IEVM for its initial consultancy on the BP deal, we conclude that IEVM has met is prima facie burden of establishing that its causes of action relate to UEG's contacts with Texas.

The fair play and substantial justice prong of the due process inquiry requires the court to consider the burden on the defendant, the forum state's interest, the plaintiff's interest in securing relief, the interest of the interstate judicial system in the efficient administration of justice, and the shared interests of the several states in furthering fundamental social policies. *McFadin*, 587 F.3d at 760. In an attempt to meet its burden on this prong, UEG argues that litigation in Texas would be unfair because UEG does not have an office or employees in Texas, it does not have a significant presence in Texas, and that the more appropriate forum would be Hong Kong where UEG is headquartered. These contentions amount to an overall assertion that the burden of asserting specific jurisdiction would be high for UEG. However, these circumstances are not unique among defendants for whom the court would assert specific jurisdiction. All nonresident defendants would have no office in Texas and would likely contend that the more convenient place for

No. 14-20552

litigation would be outside of Texas.  Without more, we conclude that UEG's

contentions do not rebut the showing made by IEVM.

Accordingly, we hold that the district court possessed specific personal

jurisdiction over UEG.

## VI.  CONCLUSION

For the foregoing reasons, we **AFFIRM IN PART** and **REVERSE IN
PART** the district court's dismissal of this action.  We affirm the dismissal of
Mueller for failure to state a claim; however, we reverse the dismissal of UEG
because the district court has personal jurisdiction over it.  We **REMAND** for
further proceedings consistent with this opinion.[4]

---

[4] We include within our remand the issue of whether IEVM has effected proper service of
process on UEG.  The district court has not yet passed upon this question, and the issue was
not resolved before the filing of this appeal.